IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

JUN 2 1 2004

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| FRANKLIN RODRIGUEZ DELGADO, et al., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-94-1337 |
| SHELL OIL COMPANY, et al., | § § § | |
| Defendants. | § § | |
| DEL MONTE FRESH PRODUCE, N.A., | § § | |
| Third-Party Plaintiff, | § § | |
| v. | § § | |
| DEAD SEA BROMINE CO., LTD. and AMERIBROME, INC., | § § § | |
| Third-Party Defendants. | § | |

## MEMORANDUM AND ORDER OF REMAND

Pending before the court are Costa Rican Plaintiffs' Motion to Remand for Ruling on Request for Return Jurisdiction (Docket Entry No. 495) and Motion for Reinstatement of Claims by Plaintiffs from Costa Rica (Docket Entry No. 438). Plaintiffs' motion to remand (Docket Entry No. 495) challenges the court's subject matter jurisdiction to rule on their motion to reinstate (Docket Entry No. 438). At issue is whether, following the Supreme Court's opinion in Dole Food Co. v. Patrickson, 123 S.Ct. 1655 (2003), this



498

court has jurisdiction to rule on plaintiffs' motion to reinstate and, if not, whether the underlying cases can be remanded to state court. For the reasons explained below, the court concludes that it lacks subject matter jurisdiction to rule on plaintiffs' motion to reinstate. Consequently, plaintiffs' motion to remand for lack of subject matter jurisdiction will be granted.

## I.  Background

In 1994 foreign banana workers allegedly injured by exposure to the chemical dibromochloropropane (DBPC) filed four separate actions in Texas state courts. One of the named defendants in each of these cases impleaded third-party defendants, Dead Sea Bromine Co., Ltd. and Ameribrome, Inc. (Dead Sea entities). Asserting that they were instrumentalities of the State of Israel under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602, et seq. (FSIA), the Dead Sea entities removed each case to federal court under 28 U.S.C. § 1441(d), which permits removal of "[a]ny civil action brought in a state court against a foreign state." Arguing inter alia that the Dead Sea entities were not instrumentalities of a foreign state under the FSIA, plaintiffs moved to remand. "In response to plaintiffs' motion to remand defendants argued that federal subject matter jurisdiction was provided by the presence of [the] Dead Sea [entities] in the case and by the existence of complete diversity of citizenship and federal questions." Delgado v. Shell Oil Co. (Delgado II), 890 F.Supp. 1324, 1337 (S.D. Tex. 1995).

-2-

On June 30, 1994, the court entered a Memorandum and Order in which it concluded that

> Dead Sea, as a foreign sovereign, had a right to remove the case, but declined to decide whether Dead Sea's presence conferred subject matter jurisdiction until Dead Sea had an opportunity to fully present its sovereign immunity arguments.  The court also deferred deciding whether alternative bases for subject matter jurisdiction existed until the parties submitted additional materials demonstrating the citizenship of Standard Fruit Co.

Delgado II, 890 F.Supp. at 1337 (citing Delgado v. Shell Oil Co. (Delgado I), 890 F.Supp. 1315, 1323 (S.D. Tex. 1994)).[1]

On July 11, 1995, the court entered a Memorandum and Order in which it concluded that

> [b]ecause Dead Sea was a foreign sovereign when plaintiffs were allegedly exposed to its DBCP . . . [and b]ecause Dead Sea has waived its foreign sovereign immunity and has consented to the jurisdiction of this court, its presence confer[red] federal subject matter jurisdiction over the entire controversy.

Id. at 1372.  The court conditionally granted defendants' motion to dismiss under the doctrine of forum non conveniens (f.n.c.), and ordered that a previously entered preliminary injunction "remain in effect pending further order of this court."  Delgado II, 890 F.Supp. at 1372-1375.  The court's Memorandum and Order also included a return jurisdiction clause.

On October 27, 1995, the court entered its Final Judgment, which included an injunction that permanently enjoined the

---

[1] The Federal Supplement incorrectly reports the date of this decision as June 30, 1995.

-3-

plaintiffs, intervenors, and others from commencing actions based on other DBCP-related claims.[2]  In response plaintiffs refiled their claims in their home countries where some are still pending.[3]

On October 19, 2000, the Fifth Circuit affirmed this court's assertion of subject matter jurisdiction and f.n.c. dismissal of this case.  Delgado v. Shell Oil Co. (Delgado III), 231 F.3d 165, 176 (5th Cir. 2000)("Dead Sea is a foreign state for purposes of the FSIA and can create federal subject matter jurisdiction in actions that it properly removes to federal court.").

On April 16, 2001, the Supreme Court denied plaintiffs' application for certiorari.  Delgado v. Shell Oil Co., 121 S.Ct. 1603 (2001).  On February 24, 2003, the Supreme Court denied plaintiffs' motion for leave to file a petition for rehearing. Delgado v. Shell Oil Co., 123 S.Ct. 1350 (2003).

## II.  Costa Rican Plaintiffs' Motion to Reinstate

Alleging that their claims have been dismissed for want of jurisdiction by the highest court of Costa Rica, Costa Rican plaintiffs seek to have their claims reinstated in an American court pursuant to the return jurisdiction clause contained in the

---

[2]See Final Judgment, Docket Entry No. 393.  See also Ex. 2 attached to Plaintiffs' and Intervenors' Motion to Vacate, Docket Entry No. 483.

[3]In their Motion to Vacate filed on May 13, 2003, plaintiffs stated that claims of Philippine, Honduran, and Ecuadoran plaintiffs are still pending in their home countries.  See Docket Entry No. 483, p. 3 ¶ 13.

court's Memorandum and Order of July 11, 1995.  See Delgado II, 890 F.Supp. at 1375.[4]

Alleging that their claims were dismissed for want of jurisdiction in a case that was affirmed by the Costa Rican Supreme Court, Costa Rican plaintiffs filed their Motion for Reinstatement of Claims by Plaintiffs from Costa Rica on April 1, 1996 (Docket Entry No. 438).  On February 20, 1997, the court entered an Order (Docket Entry No. 472) denying plaintiffs' motion to reinstate "without prejudice to being reinstated as fully briefed upon the issuance of a mandate from the Fifth Circuit affirming the court's final judgment."

On December 11, 2000, plaintiffs filed a submission informing the court that

> some of the Costa Rican plaintiffs have settled with all defendants.  Some, however, have settled with the manu-facturers of DBCP, but not with their employer.  The motion for reinstatement as to Costa Rican plaintiffs thus remains pending as to those plaintiffs employed by the Standard Fruit Co./Dole Food Co. group of defendants.[5]

Plaintiffs also informed the court that they intended to petition the Supreme Court for certiorari to review the Fifth Circuit's decision and suggested that "[t]his [c]ourt may wish to further defer ruling on the Costa Rican motion for reinstatement until the

---

[4]Motion for Reinstatement of Claims by Plaintiffs from Costa Rica, Docket Entry No. 438.

[5]See Amended Submission Concerning the Motion for Reinstatement of Claims by Plaintiffs from Costa Rica, Docket Entry No. 476, first unnumbered page.

Supreme Court's disposition of that petition."[6]  On May 30, 2001, the Ninth Circuit held in <u>Patrickson v. Dole Food Co.</u>, 251 F.3d 795, 808 (9th Cir. 2001), that the Dead Sea entities were not instrumentalities of a foreign state and, therefore, that there was no federal subject matter jurisdiction over banana-worker cases in which the Dead Sea entities had been named as third-party defendants.  On June 25, 2001, plaintiffs filed a submission informing the court that the Motion for Reinstatement of Claims by Plaintiffs from Costa Rica was still pending, asserting that although the *Supreme Court* had denied their petition for certiorari, they intended to seek rehearing, and suggesting that the court should defer ruling on the motion until the Supreme Court ruled on their petition for rehearing.[7]  On February 6, 2002, the parties submitted a Joint Status Report in which they urged the court to defer ruling on plaintiffs' motion for reinstatement pending the Supreme Court's decision on the petition for certiorari filed in <u>Patrickson</u>, and plaintiffs informed the court that if certiorari was granted in <u>Patrickson</u>, they intended to seek rehearing in this case.[8]

---

[6]<u>Id.</u> at second unnumbered page.

[7]See Plaintiffs' Status Report Concerning the Motion for Reinstatement of Claims by Plaintiffs from Costa Rica, Docket Entry No. 480.

[8]See Joint Status Report, Docket Entry No. 482, p. 3.

### III.   Motion to Vacate Final Judgment and Permanent Injunction

On June 28, 2002, the Supreme Court granted certiorari in Patrickson.  Dole Food Co. v. Patrickson, 122 S.Ct. 2657 (2002); Dead Sea Bromine Co., Ltd. v. Patrickson, 122 S.Ct. 2658 (2002). On April 22, 2003, the Supreme Court affirmed the Ninth Circuit's Patrickson decision in an opinion that squarely rejected the Fifth Circuit's Delgado holding:

> The Dead Sea Companies, as indirect subsidiaries of the State of Israel, were not instrumentalities of Israel under the FSIA at any time.  Those companies cannot come within the statutory language which grants status as an instrumentality of a foreign state to an entity "majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof." [28 U.S.C.] § 1603(b)(2).  We hold that only direct ownership of a majority of shares by the foreign state satisfies the statutory requirement.

Dole Food Co. v. Patrickson, 123 S.Ct. 1655, 1660 (2003).

Based on the Supreme Court's opinion in Patrickson, plaintiffs and intervenors filed a Motion to Vacate Order of Dismissal and Injunction, and to Remand (Docket Entry No. 483).  They argued that "[t]he Supreme Court's holding [in Patrickson] makes clear that this Court did not have jurisdiction when it denied remand of these consolidated cases and dismissed them under the doctrine of forum non conveniens."[9]  In a Memorandum and Order entered on March 15, 2004 (Docket Entry No. 493), the court granted plaintiffs' and intervenors' request to vacate the permanent injunction that prevented them from filing new DBPC-related actions after

---

[9]Plaintiffs' and Intervenors' Motion to Vacate Order of Dismissal and Injunction, Docket Entry No. 483, p. 1.

concluding that the injunction had prospective effect and that it barred new and independent actions between the same parties based on the same claims.[10]   The court also denied plaintiffs' and intervenors' motion to vacate the f.n.c. dismissal after concluding (1) that it was not void, (2) that the prospective effect of the return jurisdiction clause would not inequitably deny plaintiffs their day in court, and (3) that the conflict between the Fifth Circuit's opinion in this case and the Ninth Circuit's opinion in Patrickson did not constitute special circumstances that warranted vacating the f.n.c. dismissal.[11]   The court also entered a Final Judgment dismissing this action for lack of subject matter jurisdiction (Docket Entry No. 494).

## IV.   Costa Rican Plaintiffs' Motion to Remand for Ruling on Request for Return Jurisdiction

On March 23, 2004, Costa Rican plaintiffs filed their Motion to Remand for Ruling on Request for Return Jurisdiction (Docket Entry No. 495).

---

[10]See Memorandum and Order, Docket Entry No. 493, pp. 14-16 (citing Kirksey v. City of Jackson, 714 F.2d 42, 43 (5th Cir. 1983), and Elgin National Watch Co. v. Barrett, 213 F.2d 776, 780 (5th Cir. 1951)(upholding final judgment dismissing this case pursuant in relevant part to court's Memorandum and Order of July 11, 1995, but vacating prospective application of permanent injunction entered three years earlier based on Supreme Court's subsequent interpretation of statutory law).

[11]Id. at pp. 7-10 (explaining why dismissal is not void), pp. 12-14 (explaining why court was not persuaded that return jurisdiction clause would deny plaintiffs their day in court), and pp. 17-18 (explaining why court was not persuaded that special circumstances exist that warrant vacating the f.n.c. dismissal).

> Pursuant to the Court's Memorandum and Order entered on March 15, 2004, Plaintiffs request that the Court remand these consolidated cases to state court for a ruling on Plaintiff's request for return jurisdiction. Specifically, Plaintiffs request that the Court remand the claims of Costa Rican plaintiffs to state court for consideration of their previously-filed Motion for Reinstatement of Claims by Plaintiffs from Costa Rica.[12]

Plaintiffs assert that because the Supreme Court twice denied certiorari in this case, <u>Delgado v. Shell Oil Co.</u>, 123 S.Ct. 1350 (2003), and <u>Delgado v. Shell Oil Co.</u>, 121 S.Ct. 1603 (2001), the "Motion for Reinstatement of Claims by Plaintiffs from Costa Rica is ripe for consideration."[13] Nevertheless, plaintiffs argue that because their motion to reinstate asks the court to resume jurisdiction over their claims, and because under <u>Patrickson</u>, 123 S.Ct. 1655, the court cannot resume jurisdiction, the court lacks jurisdiction to adjudicate their motion to reinstate, "and so must remand the case to state court for consideration of the Motion for Reinstatement."[14] Although defendants agree with plaintiffs that "[r]esolution of the motion for reinstatement . . . is ripe,"[15] defendants dispute plaintiffs' assertion that the court lacks jurisdiction to rule on it.  Instead, defendants argue that "[o]nly

---

[12]Costa Rican Plaintiffs' Motion to Remand for Ruling on Request for Return Jurisdiction, Docket Entry No. 495, p. 1 ¶ 1.

[13]<u>Id.</u> at p. 2 ¶ 6.  Plaintiffs also state that their motion to reinstate is fully supported by additional briefing submitted in 1996 (Docket Entry Nos. 451, 460, and 462).  <u>Id.</u> at p. 3 ¶ 8.

[14]<u>Id.</u> at p. 3 ¶ 9.

[15]Dole Defendants' Memorandum in Opposition, Docket Entry No. 496, p. 3.

after a determination that the motion to reinstate was properly supported (which Dole disputes for all of the reasons set forth in its prior briefing), need the Court consider whether it can hear the reinstated case on the merits or whether that case should be remanded."[16]

## A.   Subject Matter Jurisdiction Over Motion to Reinstate

Although the court stated in its Memorandum and Order of March 15, 2004, that it was persuaded that the return jurisdiction clause could have prospective effect, the court declined to vacate the f.n.c. dismissal on that basis because it was not persuaded that the return jurisdiction clause would inequitably deny plaintiffs their day in court.  The court explained that

> [a]lthough under Patrickson the court would lack subject matter jurisdiction to retain and adjudicate the claims asserted in these cases based on the Dead Sea entities' status as an instrumentality of a foreign state, Patrickson does not disturb the court's power to . . . determine its jurisdiction pursuant to a motion to return.[17]

The issue now before the court is whether, following Patrickson, the court has subject matter jurisdiction to rule on the motion to reinstate that plaintiffs have filed pursuant to the return jurisdiction clause included in the July 11, 1995, Memorandum and

---

[16]Because "[a] bedrock principle of federal courts is that they have jurisdiction to determine jurisdiction," Cargill Ferrous Intern. v. SEA PHOENIX MV, 325 F.3d 695, 704 (5th Cir. 2003), and because the parties do not dispute the court's jurisdiction to rule on the pending motion, the following discussion does not address the court's jurisdiction to rule on the pending motion to remand.

[17]Memorandum and Order, Docket Entry No. 493, pp. 13-14.

Order and, if not, whether the underlying cases should be remanded to state court.   These issues are matters of first impression because, as plaintiffs observed in their prior briefing,

> there are no cases directly on point.   Specifically, Plaintiffs have found no cases in which (1) the district court dismissed for forum non conveniens, (2) Plaintiffs refiled in their home countries, where their suits were dismissed for lack of jurisdiction, and (3) before the district court had an opportunity to rule on Plaintiffs' motion to reinstate, intervening case law made clear that the district court did not have jurisdiction to dismiss for forum non conveniens.[18]

### 1.   The Court's Prior Rulings

Following removal of the state court actions underlying this action, plaintiffs moved to remand on grounds that the court lacked subject matter jurisdiction, and defendants moved to dismiss under the doctrine of f.n.c.  In its July 11, 1995, Memorandum and Order the court concluded that (1) the Dead Sea entities were instrumentalities of the State of Israel for purposes of the FSIA, and their presence in this lawsuit conferred federal subject matter jurisdiction over the entire controversy; and (2) defendants' motion to dismiss on grounds of f.n.c. should be conditionally granted.  Delgado II, 890 F.Supp. at 1372-1373.[19]

---

[18]Plaintiffs' and Intervenors' Reply in Further Support of Motion to Vacate Order of Dismissal and Injunction, and to Remand, Docket Entry No. 489, p. 4 ¶ 13.  See also id.. at p. 1 ¶ 1 where plaintiffs assert: "This case is unique.  Plaintiffs are aware of no other case in which a fundamental prerequisite to dismissal — i.e., a return jurisdiction clause — is prospective in application yet becomes unenforceable as a result of an intervening jurisdictional ruling."

[19]Although the court also enjoined plaintiffs from commencing new lawsuits, see Delgado II, 890 F.Supp. at 1375-1376, the court's
(continued...)

(a)  Subject Matter Jurisdiction

When the jurisdiction of a federal court is questioned the court necessarily has both the power and the duty to determine the jurisdictional issue. See Cargill Ferrous Intern. v. SEA PHOENIX MV, 325 F.3d 695, 704 (5th Cir. 2003)("A bedrock principle of federal courts is that they have jurisdiction to determine jurisdiction."); Scherbatskoy v. Halliburton Co., 125 F.3d 288, 290 (5th Cir. 1997)("This court necessarily has the inherent jurisdiction to determine its own jurisdiction.").

Although a judgment entered by a federal court was once open to both direct and collateral attack on grounds that the court entering the judgment lacked subject matter jurisdiction, a court's determination that it has subject matter jurisdiction is now generally held to be a final decision not subject to collateral attack if the issue of jurisdiction was actually litigated and expressly decided, even if incorrectly. See Stoll v. Gottlieb, 59 S.Ct. 134, 137-138 (1938). See also United States v. United Mine Workers of America, 67 S.Ct. 677, 695 & n.57 (1947)(citing inter alia Stoll, 59 S.Ct. at 134)("It cannot now be broadly asserted that a judgment is always a nullity if jurisdiction of some sort or other is wanting. It is now held that, except in case of plain usurpation, a court has jurisdiction to determine its own

---

[19](...continued)
Memorandum and Order of March 15, 2004, vacated that injunction. See Docket Entry No. 493, pp. 14-16.

jurisdiction, and if it be contested and on due hearing it is upheld, the decision unreversed binds the parties as a thing adjudged."); <u>Gschwind v. Cessna Aircraft Co.</u>, 232 F.3d 1342, 1346 (10th Cir. 2000), <u>cert. denied</u>, 121 S.Ct. 2520 (2001)(judgments are void for lack of subject matter jurisdiction only where there is a plain usurpation of power by a district court and not an error of law in determining whether it has jurisdiction); <u>Picco v. Global Marine Drilling Company</u>, 900 F.2d 846, 850 & n.6 (5th Cir. 1990) (agreeing with this approach where the challenging party had a full and fair opportunity to challenge the court's jurisdiction by appeal).

     (b)   Forum Non Conveniens Dismissal

When a defendant seeks dismissal under the doctrine of f.n.c. the court must determine both whether it has subject matter jurisdiction and what forum will best serve the convenience of the parties and the ends of justice.  <u>See</u> <u>Gulf Oil Corp. v. Gilbert</u>, 67 S.Ct. 839, 841 (1947)("the doctrine of forum non conveniens can never apply if there is absence of jurisdiction or mistake of venue"); <u>Koster v. Lumbermen's Mutual Casualty Co.</u>, 67 S.Ct. 828, 833 (1947)(when considering a motion to dismiss for f.n.c. "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice").  Parties seeking f.n.c. dismissals must demonstrate (1) the existence of an available and adequate alternative forum and (2) that the balance of relevant

-13-

private and public interest factors strongly favor dismissal.  <u>See</u>

<u>Veba-Chemie A.G. v. M/V GETAFIX</u>, 711 F.2d 1243, 1245 (5th Cir.

1983); <u>Vasquez v. Bridgestone/Firestone, Inc.</u>, 325 F.3d 665, 671

(5th Cir. 2003).

### (1)   Conditionally Granted

Courts often condition f.n.c. dismissals on defendants'

agreement not to evade the jurisdiction of foreign courts.  <u>See</u>,

<u>e.g.</u>, <u>Robinson v. TCI/US West Communications, Inc.</u>, 117 F.3d 900,

908 (5th Cir. 1997)("measures needed to ensure that defendants will

not attempt to evade the jurisdiction of foreign courts" may

include "agreements between the parties to litigate in another

forum, to submit to service of process in that jurisdiction, to

waive the assertion of any limitations defenses, to agree to

discovery, and to agree to the enforceability of the foreign

judgment").

The July 11, 1995, Memorandum and Order contained the

following conditions:

> Delgado, Jorge Carcamo, Valdez, and Isae Carcamo will be
> dismissed 90 days after the entry of this Memorandum and
> Order provided that defendants and third- and fourth-
> party defendants have:
>
> (1)   participated in expedited discovery in the
>       United States according to the following
>       schedule. . .
>
> (2)   either waived or accepted service of process and
>       waived any other jurisdictional defense within 40
>       days after the entry of this Memorandum and Order
>       in any action commenced by a plaintiff in these
>       actions in his home country or the country in which
>       his injury occurred.  Any plaintiff desiring to

-14-

> bring such an action will do so within 30 days
> after the entry of this Memorandum and Order;
>
> (3) waived within 40 days after the entry of this
> Memorandum and Order any limitations-based defense
> that has matured since the commencement of these
> actions in the courts of Texas;
>
> (4) stipulated within 40 days after the entry of this
> Memorandum and Order that any discovery conducted
> during the pendency of these actions may be used in
> any foreign proceeding to the same extent as if it
> had been conducted in proceedings initiated there;
> and
>
> (5) submitted within 40 days after the entry of this
> Memorandum and Order an agreement binding them to
> satisfy any final judgment rendered in favor of
> plaintiffs by a foreign court.

<u>Delgado II</u>, 890 F.Supp. at 1373.  The court's Memorandum and Order

also included the following return jurisdiction clause:

> c.  Return
>
> Notwithstanding the dismissals that may result from this
> Memorandum and Order, in the event that the highest court
> of any foreign country finally affirms the dismissal for
> lack of jurisdiction of any action commenced by a
> plaintiff in these actions in his home country or the
> country in which he was injured, that plaintiff may
> return to this court and, upon proper motion, the court
> will resume jurisdiction over the action as if the case
> had never been dismissed for f.n.c.

<u>Delgado II</u>, 890 F.Supp. at 1375.

### (2)   Reasons for Granting Conditionally

The court conditioned its f.n.c. dismissal of this case on

both the defendants' agreements and the return jurisdiction clause

because the Fifth Circuit had previously directed district courts

granting f.n.c. dismissals to "ensure that a plaintiff can

reinstate his suit in the alternative forum without undue inconvenience or prejudice and that if the defendant obstructs such reinstatement in the alternative forum that the plaintiff may return to the American forum." <u>In re Air Crash Disaster Near New Orleans, La., on July 9, 1982</u>, 821 F.2d 1147, 1166 (5th Cir. 1987)(en banc), <u>vacated on other grounds sub nom. Pan American World Airways, Inc. v. Lopez</u>, 109 S.Ct. 1928 (1989), <u>opinion reinstated on other grounds</u>, 883 F.2d 17 (5th Cir. 1989). <u>See also Robinson</u>, 117 F.3d at 907.

The Fifth Circuit had explained that courts granting f.n.c. dismissals

> must take measures, as part of their dismissals in forum non conveniens cases, to ensure that defendants will not attempt to evade the jurisdiction of the foreign courts. Such measures often include agreements between the parties to litigate in another forum, to submit to service of process in that jurisdiction, to waive the assertion of any limitations defenses, to agree to discovery, and to agree to the enforceability of the foreign judgment.

<u>Baris v. Sulpicio Lines, Inc.</u>, 932 F.2d 1540, 1551 (5th Cir.), <u>cert. denied</u>, 112 S.Ct. 430 (1991)(citing <u>Air Crash</u>, 821 F.2d at 1166).

### (3)   Purpose for Return Jurisdiction Clause

Since 1995 when the f.n.c. dismissal was entered in this action, the Fifth Circuit has held that the "failure to include a return jurisdiction clause in an f.n.c. dismissal constitutes a <u>per se</u> abuse of discretion." <u>Robinson</u>, 117 F.3d at 907. Concerned that there is no guarantee either that a foreign forum will remain

-16-

an available forum or that defendants will submit to a foreign
forum's jurisdiction, the Fifth Circuit has explained that "[a]
return jurisdiction clause remedies this concern by permitting
parties to return to the dismissing court should the lawsuit become
impossible in the foreign forum." See Vasquez, 325 F.3d at 675
(vacating f.n.c. dismissal and remanding with instructions to
include a return jurisdiction clause). See also Robinson, 117 F.3d
at 907-908 (describing return jurisdiction clause as "part of a
larger set of measures needed to ensure that defendants will not
attempt to evade the jurisdiction of the foreign courts which may
also include agreements between the parties"). The Fifth Circuit's
requirement that f.n.c. dismissals contain return jurisdiction
clauses, and its explanations of the reasons for this requirement,
make it clear that return jurisdiction clauses are intended to
ensure that cases subject to those dismissals remain subject to the
dismissing court's jurisdiction.[20]

### (4) Preclusive Effect of F.N.C. Dismissal

"In general, f.n.c. dismissals are without prejudice . . .
[and] the ordinary f.n.c. dismissal is not accorded full res
judicata effect." Delgado II, 890 F.Supp. at 1374. See also

----

[20]This conclusion accords with the reasons courts commonly use
to justify other conditions on which f.n.c. dismissals are often
premised, e.g., injunctions. See Delgado II, 890 F.Supp. at 1374-
1375, concluding that a "[c]ontinuation of the preliminary
injunction . . . [was] necessary to preserve the status quo and to
preserve the court's jurisdiction and authority until the parties
have taken the actions necessary to give effect to the terms of
this Memorandum and Order."

-17-

<u>Vasquez</u>, 325 F.3d at 676 and 680 (f.n.c. dismissal is not a
decision on the merits, <u>i.e.</u>, dismissal based on federal f.n.c.
does not resolve the underlying substantive issues); <u>American
Dredging Co. v. Miller</u>, 114 S.Ct. 981, 989 & n.4 (1994)(f.n.c. "is
not a substantive right of the parties, but a procedural rule of
the forum").  Consequently, "[a] forum non conveniens dismissal in
one forum does not necessarily preclude the maintenance of an
identical suit in another forum." <u>Id</u>.  <u>See also</u> <u>Chick Kam Choo v.
Exxon Corp.</u>, 108 S.Ct. 1864, 1690-1692 (1988)(because the only
issue decided by the [d]istrict [c]ourt was that petitioner's
claims should be dismissed under the federal forum non conveniens
doctrine, injunction barring state courts from considering foreign
law claims exceeded scope of Anti-Injunction Act's relitigation
exception).

2.   <u>Patrickson's Effect on the Court's Prior Rulings</u>

"When [the Supreme Court] applies a rule of law to the parties
before it, that rule is the controlling interpretation of federal
law and must be given full retroactive effect in all cases still
open on direct review and as to all events, regardless of whether
such events predate or postdate [its] announcement of the rule."
<u>Harper v. Virginia Dep't of Taxation</u>, 113 S.Ct. 2510, 2517 (1993).
<u>See also</u> <u>James B. Beam Distilling Co. v. Georgia</u>, 111 S.Ct. 2439,
2448 (1991)(rule of federal law pertaining to choice of law once
announced and applied to parties before the Supreme Court must be

-18-

given full retroactive effect to all others not barred by procedural requirements or res judicata); Hulin v. Fibreboard Corp., 178 F.3d 316, 329 & n.5 (5th Cir. 1999)("that which distinguishes a judicial from a legislative act, is that . . . [the former] is a determination of what the existing law is in relation to some existing thing already done or happened, while the . . . [latter] is predetermination of what the law shall be for the regulation of all future cases").

(a)   Subject Matter Jurisdiction

The Supreme Court's opinion in Patrickson, 123 S.Ct. at 1655, establishes that this court's conclusions that the Dead Sea entities were instrumentalities of the State of Israel for purposes of the FSIA and that their presence in this case conferred federal subject matter jurisdiction were incorrect.  See Rivers v. Roadway Express, Inc., 114 S.Ct. 1510, 1519 (1994)("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.").  Nevertheless, the court's March 15, 2004, Memorandum and Order denied plaintiffs' motion to vacate the f.n.c. dismissal because the court concluded that when it entered the f.n.c. dismissal in 1995 it had an arguable basis for asserting subject matter jurisdiction, and because the court was not persuaded either that the prospective effect of the return jurisdiction clause would inequitably deny plaintiffs their day in court, or that the conflict between the Fifth Circuit's opinion in

-19-

this case and the Ninth Circuit's opinion in <u>Patrickson</u> constituted special circumstances that warranted vacating the f.n.c. dismissal.[21]

      (b)   Forum Non Conveniens Dismissal

Because the Supreme Court's decision in <u>Patrickson</u> was issued <u>after</u> this court's assertion of subject matter jurisdiction was fully litigated and after the f.n.c. dismissal became operative (as evidenced by plaintiffs' statement that they have filed suit in their home countries),[22] the court concludes that the f.n.c. dismissal and the return jurisdiction clause on which it was premised remain valid despite the Supreme Court's subsequent determination in <u>Patrickson</u> that this court's assertion of subject matter jurisdiction and the Fifth Circuit's affirmance were in error.  <u>See</u> <u>Stoll</u>, 59 S.Ct. at 137; <u>United Mine Workers</u>, 67 S.Ct. at 695 & n.57.

The argument advanced in plaintiffs' pending motion implicitly, if not explicitly, recognizes that the return jurisdiction clause contained in the July 11, 1995, Memorandum and Order and the resulting order of f.n.c. dismissal are both valid and enforceable:

_____

[21]See Memorandum and Order, Docket Entry No. 493, at pp. 7-10 (explaining why dismissal is not void), pp. 12-14 (explaining why court was not persuaded that return jurisdiction clause would deny plaintiffs their day in court), and pp. 17-18 (explaining why court was not persuaded that special circumstances exist that warrant vacating the f.n.c. dismissal).

[22]See Plaintiffs' and Intervenors' Motion to Vacate, Docket Entry No. 483, p. 3 ¶ 13.

the [c]ourt can, consistent with its 1995 order of
dismissal, remand to state court for consideration of the
motion to reinstate. . . [because a]s suggested by the
Court's recent Memorandum and Order denying Plaintiff's
Motion to Vacate, such a remand will have no effect on
the applicability to the parties of the 1995 order of
dismissal.[23]

Plaintiffs argue, however, that as a result of Patrickson, this
court has lost the ability to adjudicate plaintiffs' motion to
reinstate.

3.   Parties' Arguments

Citing Kokkonen v. Guardian Life Ins. Co. of America, 114
S.Ct. 1673, 1676 (1994), plaintiffs argue that the court lacks
jurisdiction to rule on their motion to reinstate because their
motion asks the court to resume jurisdiction over their claims and
that under Patrickson, 123 S.Ct. at 1655, the court cannot resume
jurisdiction.[24]   Also citing Kokkonen, defendants argue that the
court has jurisdiction to rule on plaintiffs' motion to reinstate
because plaintiffs' motion only asks the court to enforce the terms
of the return jurisdiction clause contained in its valid judgment,
and federal courts have ancillary jurisdiction to enforce their own
judgments.[25]

_____

[23]Costa Rican Plaintiffs' Reply, Docket Entry No. 497, p. 3
¶ 6.  See also id. at p. 4 asserting that "remand will have no
effect on the enforceability of the Court's judgment."

[24]Costa Rican Plaintiffs' Motion to Remand for Ruling on
Request for Return Jurisdiction, Docket Entry No. 495, p. 3 ¶ 9.

[25]Dole Defendants' Memorandum in Opposition, Docket Entry
No. 496, pp. 3-5.

(a)   Plaintiffs' Arguments

In support of their argument that because of <u>Patrickson</u>, 123 S.Ct. at 1655, "the court cannot resume jurisdiction, and so must remand this case to state court for consideration of the Motion for Reinstatement,"[26] plaintiffs assert:

> In order to rule on the motion for reinstatement, the Court would have to consider the facts presented by the parties in their briefing on the motion for reinstatement in order to determine whether those facts demonstrate that Costa Rica is not an available alternative forum. <u>Vasquez v. Bridgestone/Firestone, Inc.</u>, 325 F.3d 665, 675 (5th Cir. 2003) (noting that the purpose of a return jurisdiction clause is to ensure the availability of an alternative forum). However, a Court cannot address any aspect of the forum non conveniens issue without first determining that it has subject-matter jurisdiction. <u>Gulf Oil Corp. v. Gilbert</u>, 67 S.Ct. 839 (1947)("[T]he doctrine of forum non conveniens can never apply if there is absence of jurisdiction or mistake of venue.") As stated by the Fifth Circuit in <u>Baris v. Suplicio</u>. . .
>
> > We must determine, initially, whether the federal district court had jurisdiction over this removed action. If it did not have jurisdiction at the time it ruled on the question of forum non conveniens, we may not consider that issue and must direct the district court to remand the entire proceeding to state court.
>
> <u>Baris</u>, 932 F.2d at 1542. Consistent with <u>Baris</u>, because the Court does not have subject-matter jurisdiction, it cannot make any findings regarding the forum non conveniens issue raised by the Motion for Reinstatement, but instead must remand the Costa Rican plaintiffs to state court.[27]

---

[26]Costa Rican Plaintiffs' Motion to Remand for Ruling on Request for Return Jurisdiction, Docket Entry No. 495, p. 3 ¶ 9.

[27]<u>Id</u>.

                    (b)   Defendants' Arguments

     Defendants argue that "the Court has the authority to consider
whether the Costa Rica plaintiffs' motion to reinstate meets the
threshold for reinstatement established by the 1995 Judgment."[28]
Citing Royal Insurance Co. of America v. Quinn-L Capital Corp., 960
F.2d 1286, 1292 (5th Cir. 1992), cert. denied, 114 S.Ct. 1541
(1994)(quoting Southmark Properties v. Charles House Corp., 742
F.2d 862, 868 (5th Cir. 1984), defendants argue that "[i]t has long
been established that a federal court has ancillary jurisdiction to
resolve issues regarding the implementation or protection of its
judgments, even in the absence of an independent basis for subject
matter jurisdiction in the subsequent proceeding."[29]   Defendants
also cite Kokkonen, 114 S.Ct. at 1676, for its description of the
two purposes for which ancillary jurisdiction has been asserted;

          (1) to permit disposition by a single court of claims
          that are, in varying respects and degrees, factually
          interdependent; . . . and (2) to enable a court to
          function successfully, that is, to manage its
          proceedings, vindicate its authority, and effectuate its
          decrees.

Defendants argue that

          the cases cited by plaintiffs which stand for the
          unremarkable proposition that a court must determine its
          subject matter jurisdiction before making a forum non
          conveniens ruling, are inapposite.  The Court determined
          its subject matter jurisdiction, which was upheld on
          appeal, made its forum non conveniens ruling, and

_____

     [28]Dole Defendants' Memorandum in Opposition, Docket Entry
No. 496, p. 2.

     [29]Id. at p. 3.

                              -23-

> incorporated that ruling into a valid, final judgment
> that provided for possible reinstatement, and the Court
> has the authority to decide if the requirements for
> reinstatement put in place by its Judgment have been
> met.[30]

Defendants specifically argue that "[b]ecause the [m]otion to [r]einstate [i]s [p]rovided for in the 1995 [j]udgment, the [c]ourt [h]as [j]urisdiction to [r]esolve the [m]otion."[31]

### (c)   Analysis

For the reasons explained below the court concludes that it lacks ancillary enforcement jurisdiction to decide the Costa Rican plaintiffs' pending motion to reinstate.

### (1)   Limited Jurisdiction of Federal Courts

Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statutes of the United States.  Kokkonen, 114 S.Ct. at 1675 (citing Willy v. Coastal Corp., 112 S.Ct. 1076, 1080 (1992)).  Federal jurisdiction is not to be expanded by judicial decree.  Id. (citing American Fire & Casualty Co. v. Finn, 71 S.Ct. 534, 542 (1951)).  Moreover, federal courts must presume that a cause lies outside their limited jurisdiction, id. (citing Turner v. Bank of North America, 4 U.S. (4 Dall.) 8, 11 (1799)), and place the burden of establishing the contrary on the party asserting jurisdiction.  Id. (citing McNutt

---

[30]Id. at p. 5.

[31]Id. at p. 3.

-24-

v. General Motors Acceptance Corp. of Indiana, 56 S.Ct. 780, 782
(1936)).

### (2)  Supplemental Jurisdiction

In 1990 the case law doctrines of "ancillary" and "pendent"
jurisdiction were codified under the name "supplemental
jurisdiction."  See 28 U.S.C. § 1367.  See also David D. Siegel,
Practice Commentary following 28 U.S.C. § 1367 (West 1994).
Section 1367(a) provides:

> Except as provided in subsections (b) and (c) or as
> expressly provided otherwise by Federal statute, in any
> civil action of which the district courts have original
> jurisdiction, the district courts shall have supplemental
> jurisdiction over all other claims that are so related to
> claims in the action within such original jurisdiction
> that they form part of the same case or controversy under
> Article III of the United States Constitution.  Such
> supplemental jurisdiction shall include claims that
> involve the joinder or intervention of additional
> parties.

In Kokkonen, 114 S.Ct. at 1676, the Supreme Court observed that it
has asserted ancillary jurisdiction for two separate, though
sometimes related, purposes:

> (1) to permit disposition by a single court of claims
> that are, in varying respects and degrees, factually
> interdependent; . . . and (2) to enable a court to
> function successfully, that is, to manage its
> proceedings, vindicate its authority, and effectuate its
> decrees.

The first category of ancillary jurisdiction described by the
Kokkonen Court is codified in the supplemental jurisdiction
statute, 28 U.S.C. § 1367.  See Hudson v. Coleman, 347 F.3d 138,
142 (6th Cir. 2003).  The second category, which defendants argue

-25-

vests the court with jurisdiction to rule on the motion to reinstate, remains largely uncodified and is often referred to as "ancillary enforcement jurisdiction." Id.

### (3)   Ancillary Enforcement Jurisdiction

"Enforcement jurisdiction" refers to that portion of ancillary jurisdiction based in the inherent power of federal courts to enforce their judgments in certain situations where jurisdiction would otherwise be lacking. See Peacock v. Thomas, 116 S.Ct. 862 (1996). See also U.S.I. Properties Corp. v. M.D. Construction Co., 230 F.3d 489, 496 & n.5 (1st Cir. 2000)("we use the phrase 'enforcement jurisdiction' to refer to that portion of ancillary jurisdiction based in the inherent power of federal courts to exercise jurisdiction in order to enforce their judgments in certain situations where jurisdiction would otherwise be lacking"); S. Glenn, Note, Federal Supplemental Enforcement Jurisdiction, 42 S.C.L.Rev. 469, 472 (1991).  In Peacock the Court explained that

> [a]ncillary jurisdiction may extend to claims having a factual and logical dependence on "the primary lawsuit,"
> . . . but that primary lawsuit must contain an independent basis for federal jurisdiction.  The court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims.

Id. at 867 (citing, inter alia, Kokkonen, 114 S.Ct. at 1677).  The Court emphasized that it had

> reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments . . . [because w]ithout jurisdiction to enforce a judgment entered by a

-26-

federal court, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution."

Id. at 868 (quoting Riggs v. Johnson County, 6 Wall. 166, 187, 18 L.Ed. 768 (1868)). The Court further explained that

[i]n defining that power, we have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings . . . to assist in the protection and enforcement of federal judgments including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances.

Id.

Federal courts have also exercised ancillary jurisdiction over requests to continue previously dismissed actions over which the court has expressly retained jurisdiction. See Kokkonen, 114 S.Ct. at 1677 (citing Julian v. Central Trust Co., 24 S.Ct. 399, 408 (1904)("A bill filed to continue a former litigation in the same court, or which relates to some matter already partly litigated in the same court, or which is an addition to a former litigation in the same court, by the same parties or their representatives standing in the same interest, or to obtain and secure the fruits, benefits, and advantages of the proceedings and judgment in a former suit in the same court by the same . . . parties, standing in the same interest . . . --is an ancillary suit."). The limited scope of federal jurisdiction confines the scope of ancillary enforcement jurisdiction to proceedings that are a continuation of the original action.

-27-

### (4)   Court's Conclusions Regarding Jurisdiction to Rule

The Supreme Court's decision in <u>Patrickson</u>, 123 S.Ct. at 1655, establishes that the court's assertion of subject matter jurisdiction over this action based on the presence of the Dead Sea entities was erroneous. <u>See Rivers</u>, 114 S.Ct. at 1519. Because plaintiffs challenged the court's subject matter jurisdiction at the time of removal, that issue was litigated and decided before the court entered its judgment of f.n.c. dismissal. Because the court's assertion of subject matter jurisdiction was affirmed on appeal in an opinion that the Supreme Court declined to review before it decided <u>Patrickson</u>, 123 S.Ct. at 1655, the court's decision to assert subject matter jurisdiction over this action and its decision that plaintiffs' claims should be dismissed under the doctrine of f.n.c. are both final. <u>See Stoll</u>, 59 S.Ct. at 137; <u>Gschwind</u>, 232 F.3d at 1346.

Nevertheless, because the court's f.n.c. dismissal decided only that this is not a forum "where trial will best serve the convenience of the parties and the ends of justice," <u>Koster</u>, 67 S.Ct. at 833, and did not resolve any of plaintiffs' claims on the merits, <u>see Vasquez</u>, 325 F.3d at 676 and 680, and <u>Chick Kam Choo</u>, 108 S.Ct. at 1690-1692, the resulting judgment of dismissal prevented plaintiffs from pursuing their claims in another American court, but did not prevent plaintiffs from pursuing their claims in foreign fora, and had no preclusive effect on the merits of plaintiffs' claims. <u>See Vasquez</u>, 325 F.3d at 679 ("Although an

-28-

f.n.c. dismissal designated on the merits may bar reconsideration of the claims in another Texas federal court, it cannot forever bar the controversy from all American courts."); American Dredging, 114 S.Ct. at 989 & n.4 (f.n.c. "is not a substantive right of the parties, but a procedural rule of the forum"). See also Exxon Corp. v. Chick Kam Choo, 817 F.2d 307, 312 (5th Cir. 1987), rev'd on other grounds, 108 S.Ct. 1684 (1988)(even where the court enters a final f.n.c. dismissal, it may reconsider the issue if there is a change in the material facts underlying the judgment).

To ensure that foreign fora would be available to adjudicate plaintiffs' claims on the merits and that, if and when the highest court of a foreign country dismissed plaintiffs' claims for lack of jurisdiction, plaintiffs could return to this forum, the f.n.c. dismissal was conditionally premised on agreements between the parties and on the return jurisdiction clause included in the court's July 11, 1995, Memorandum and Order. Delgado II, 890 F.Supp. at 1373-1375. See also Air Crash, 821 F.2d at 1166; Robinson, 117 F.3d at 907-908; and Vasquez, 325 F.3d at 675.

Because the Supreme Court has held that district courts cannot retain continuing jurisdiction over actions that are dismissed pursuant to agreements between the parties without expressly stating in the judgment either the terms of those agreements or the court's intent to retain continuing jurisdiction over them, and because the Fifth Circuit has directed district courts to include return jurisdiction clauses in f.n.c. dismissals to ensure that

-29-

dismissing courts remain available in the event that foreign courts are, or become, unavailable, the court concludes that the return jurisdiction clause included in the court's July 11, 1995, Memorandum and Order constitutes an express statement of the court's intent to retain jurisdiction over this action, both to enforce the agreements on which the dismissal was premised and to ensure that an American forum remains available to adjudicate plaintiffs' claims if and when the highest court of a foreign country dismisses them for lack of jurisdiction. See Kokkonen, 114 S.Ct. at 1677. Because the return jurisdiction clause expressly provides that plaintiffs are to seek return via motion filed in this court, the court concludes that plaintiffs' filing (or reassertion) of their motion to reinstate is a direct continuation of the prior proceedings over which the court expressly stated its intent to retain jurisdiction. Nevertheless, as explained below, the court concludes that it lacks subject matter jurisdiction to review plaintiffs' motion to reinstate because (i) review of plaintiffs' motion is not needed to protect the court's judgment of f.n.c. dismissal, and (ii) the Supreme Court's decision in Patrickson terminated the ancillary enforcement jurisdiction that existed from the court's original assertion of subject matter jurisdiction over this controversy.

(i)  The Court's Review Not Necessary

The court's conclusion that its review of plaintiffs' motion to reinstate is not needed to protect its judgment of f.n.c.

dismissal is premised on three principles of federal law: (1) f.n.c. dismissals decide only that the issuing court is an inconvenient forum for plaintiffs' claims and do not resolve any of plaintiffs' claims on the merits, see Vasquez, 325 F.3d at 676 and 680, Chick Kam Choo, 108 S.Ct. at 1690-1692, and American Dredging, 114 S.Ct. at 989 & n.4; (2) despite the change in Supreme Court decisional law effected by Patrickson, 123 S.Ct. at 1655, the court's f.n.c. dismissal remains valid and enforceable, see Stoll, 59 S.Ct. at 137, and Gschwind 232 F.3d at 1346; and (3) state courts are presumed competent to resolve federal issues. See Chick Kam Choo, 108 S.Ct. at 1691 (citing Pennzoil Co. v. Texaco, Inc., 107 S.Ct. 1519, 1528-1529 (1987), and Clothing Workers v. Richmond Brothers Co., 75 S.Ct. 452, 456-457 (1955)).

Defendants' argument that the court is able to rely on its ancillary enforcement jurisdiction to rule on plaintiffs' pending motion to reinstate is premised on the court's retention of jurisdiction to resolve issues concerning the implementation or protection of its judgment.[32] In support of this argument defendants cite Kokkonen, 114 S.Ct. at 1676, for its description of ancillary jurisdiction as enabling "a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." But the only issue decided by the court's f.n.c. dismissal was that this court was not a convenient forum for plaintiffs' claims. Following the f.n.c.

---

[32]Id.

dismissal plaintiffs filed suit in their home countries.  The court
therefore concludes that it does not need to enforce its judgment
of f.n.c. dismissal because the judgment of dismissal has been
fully effected.[33]   Moreover, because the f.n.c. dismissal became
final before the change in decisional law effected by Patrickson,
123 S.Ct. at 1655, the court concludes that the return jurisdiction
clause remains available as an avenue for plaintiffs to reinstate
their claims in other American fora.   See Stoll, 59 S.Ct. at 137;
Gschwind, 232 F.3d at 1346.

Although plaintiffs moved the court to vacate the f.n.c.
dismissal on grounds that following Patrickson, 123 S.Ct. at 1655,
"this [c]ourt has no jurisdiction to enforce the return juris-
diction clause,"[34] plaintiffs have not argued that the return
jurisdiction clause could not be enforced by state courts and could
not serve as a means for returning their claims to state courts.
While the court is persuaded that Patrickson precludes it from
resuming jurisdiction over plaintiffs' substantive claims, the

---

[33]Although in opposition to the plaintiffs' motion to
reinstate, defendants allege that the Costa Rican plaintiffs did
not comply with the court's judgment in good faith and, in fact,
presented their claims to the Costa Rican courts in a manner
designed to evoke dismissal for want of jurisdiction, the court is
not persuaded that even if true, defendants' allegations evidence
a failure to effect the court's judgment of f.n.c. dismissal.  See,
e.g., Defendants' Opposition to Plaintiffs' Motion for Reinstate-
ment of Claims by Plaintiffs from Costa Rica, Docket Entry No. 446,
filed on April 22, 1996.

[34]Plaintiffs' and Intervenors' Motion to Vacate Order of
Dismissal and Injunction, and to Remand, Docket Entry No. 483,
p. 7, ¶ 31.

court is not persuaded either that Patrickson requires it to vacate
the f.n.c. dismissal, or that vacatur is needed to preserve the
plaintiffs' ability to return to an American forum if and when
foreign fora are -- or become -- unavailable or inadequate.
Moreover, because f.n.c. "is not a substantive right of the
parties, but a procedural rule of the forum," see American
Dredging, 114 S.Ct. at 989 & n.4, the court concludes that the
question posed by plaintiffs' motion to reinstate, i.e., whether
plaintiffs' claims should be returned to an American forum, must
now be addressed by the only courts to which those claims can be
returned, i.e., the state courts of Texas.

Although under Patrickson this court's assertion of subject
matter jurisdiction was mistaken, under United Mine Workers of
America, 67 S.Ct. at 695 & n.57, and its progeny the resulting
judgment is neither void nor invalid.  Because the judgment is
neither void nor invalid, the return jurisdiction clause on which
it was premised remains valid and enforceable.  Because state
courts are presumed competent to resolve federal issues, see Chick
Kam Choo, 108 S.Ct. at 1691, the court concludes that the state
courts are capable of ruling on the Costa Rican plaintiffs' pending
motion to reinstate and on any other like motions that may
eventually be filed by plaintiffs from other countries.
Accordingly, the court concludes that its review of the plaintiffs'
motion to reinstate is not needed to enforce its judgment of f.n.c.
dismissal because that judgment has been effected and because the

return jurisdiction clause can be considered by the state courts in which the cases originated.

(ii)   Ancillary Jurisdiction Terminated

The court's conclusion that the Supreme Court's decision in Patrickson terminated the ancillary enforcement jurisdiction that existed from the court's original assertion of subject matter jurisdiction over this action is also premised on three principles of federal law:  (1) the Supreme Court's construction of a federal statute is the authoritative statement of what the statute meant both before and after the decision of the case giving rise to that construction, see Rivers, 114 S.Ct. at 1519; (2) ancillary jurisdiction is supplemental to and necessarily dependent on the court's original assertion of subject matter jurisdiction, see Kokkonen, 114 S.Ct. at 1677; and (3) new Supreme Court decisional law must be applied to cases pending on direct review, see Harper, 113 S.Ct. at 2517.

Because the Supreme Court's construction of a federal statute is the authoritative statement of what the statute meant both before and after the decision of the case giving rise to that construction, see Rivers, 114 S.Ct. at 1519, the Court's construction of the FSIA in Patrickson establishes that the Dead Sea entities were not instrumentalities of the State of Israel for purposes of the FSIA when these cases were removed to this court. Because ancillary jurisdiction is supplemental to and necessarily

-34-

dependent on the court's original assertion of subject matter jurisdiction, <u>Patrickson</u> terminated whatever ancillary jurisdiction existed.  Nevertheless, because the court's judgment of dismissal had already become final when <u>Patrickson</u> was decided, plaintiffs remain able to seek reinstatement pursuant to the return jurisdiction clause by filing a motion in this court.  But because the court has concluded that plaintiffs' motion to reinstate is a direct continuation of the prior proceedings over which the court expressly stated its intent to retain jurisdiction, the court also concludes that plaintiffs' motion to reinstate is subject to the rule of law applied in <u>Patrickson</u>.  <u>See</u> <u>id</u>.  <u>See also</u> <u>James B. Beam</u>, 111 S.Ct. at 2448 (rule of federal law once announced and applied to parties before the Court must be given full retroactive effect to all others not barred by res judicata or limitations).

**B.   Duty to Remand**

Plaintiffs argue that because the court cannot resume jurisdiction over this case, it must remand the underlying actions to the state courts of Texas.

### 1.   <u>Statutory Authority to Remand</u>

The court's power to remand a removed action to state court is set forth at 28 U.S.C. § 1447(c):

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. . .  A certified copy of the order of remand shall be mailed by the clerk to the clerk

of the State court.   The State court may thereupon
proceed with such case.

This statute expressly limits the time during which a district
court can remand for lack of subject matter jurisdiction to "any
time before final judgment."   Id.

### 2.   Finality of F.N.C. Judgment of Dismissal

Because f.n.c. "is not a substantive right of the parties, but
a procedural rule of the forum," American Dredging, 114 S.Ct. at
989 & n.4, and because f.n.c. dismissals do not resolve the merits
of plaintiffs' claims, see Vasquez, 325 F.3d at 676, the f.n.c.
dismissal entered in this case was "final" only for purposes of
appealing the court's f.n.c. decision; the f.n.c. dismissal was not
a "final judgment" that extinguished the court's duty either to
continue examining its subject matter jurisdiction over this case,
or to remand the underlying cases to state court when and if it
determines that it lacks subject matter jurisdiction.

### (a)   Original Source of Subject Matter Jurisdiction

The parties do not dispute that the Supreme Court's decision
in Patrickson, 123 S.Ct. at 1655, that the Dead Sea entities are
not instrumentalities of the State of Israel for purposes of the
FSIA constitutes changed legal circumstances that divest this court
of the subject matter jurisdiction that it originally asserted over
this case.   See Rivers, 114 S.Ct. at 1519.   Accordingly, the court
concludes that Patrickson, 123 S.Ct. at 1655, terminated whatever

-36-

ancillary jurisdiction existed from the court's original (now
erroneous) assertion of subject matter jurisdiction over this
controversy. See Kokkonen, 114 S.Ct. at 1677 (ancillary juris-
diction is derivative).

   (b) Alternative Source of Subject Matter Jurisdiction

  Although defendants assert that "diversity of citizenship
. . . undeniably exists here,"[35] they fail to explain how or why
diversity jurisdiction exits in this case, and plaintiffs deny its
existence.[36]  Absent defendants' showing to the contrary, the court
must presume that a cause lies outside its subject matter
jurisdiction.  See id. at 1675 (citing McNutt, 56 S.Ct. at 782
(party asserting federal jurisdiction bears burden of proof on that
issue)).  Because plaintiffs' pending motion to remand challenges
the existence of the court's subject matter jurisdiction, and
because defendants have failed to present any evidence or any
argument from which the court could conclude that an alternative
basis for asserting subject matter jurisdiction over this case
exists, the court concludes that subject matter jurisdiction is
lacking.

---

[35]Dole Defendants' Memorandum in Opposition, Docket Entry
No. 496, p. 3.

[36]Costa Rican Plaintiffs' Reply, Docket Entry No. 497, p. 3 &
n.1.

## V.  Conclusions and Order Of Remand

For the reasons explained above, Costa Rican Plaintiffs'
Motion to Remand for Ruling on Request for Return Jurisdiction
(Docket Entry No. 495) is **GRANTED**.[37]

### B.  Order of Remand

For the reasons explained above the court concludes that the
Supreme Court's decision in Dole Food Co. v. Patrickson, 123 S.Ct.
1655 (2003), divested it of subject matter jurisdiction over the
cases consolidated in this action and that the two actions
involving Costa Rican plaintiffs should be and are hereby **SEVERED**
from this action and **REMANDED** under 28 U.S.C. § 1447(c) for lack of
subject matter jurisdiction.  Accordingly, Delgado v. Shell Oil
Co., H-94-1337, is **REMANDED** to the 212th District Court of
Galveston County, Texas, and Jorge Carcamo v. Shell Oil Co., H-94-
1359, is **REMANDED** to the 23rd District Court of Brazoria County.

------

[37]Despite their recognition of the fact that the motions
pending in this case pose novel questions of first impression, the
parties limited their briefing almost exclusively to the
unremarkable principles that courts must determine that they have
subject matter jurisdiction over an action and that courts possess
the ability to enforce their judgments without arguing how the
court should apply these principles to the unique facts of this
case to rule on the pending motions.  As the length of this
Memorandum and Order indicates, the court has expended considerable
time reading the parties' papers, and performing a significant
amount of independent research to be as fully informed as possible
when addressing their arguments.  Accordingly, the court strongly
discourages the parties from seeking reconsideration based on
arguments they have previously raised or that they could have
raised.

The Clerk of this court is **ORDERED** to promptly send a copy of this Memorandum and Order of Remand to the county clerks of Galveston County and Brazoria County.

      **SIGNED** at Houston, Texas, on this the 18th day of June, 2004.

                                     SIM LAKE
                           UNITED STATES DISTRICT JUDGE